UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-50-GFVT-08 |
| v. ) | |
| WILLIAM STEFAN NAPIER, ) | RECOMMENDED DISPOSITION |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant William Stefan Napier. *See* D.E. 370 at 2. District Judge Van Tatenhove entered a judgment against Defendant on March 11, 2015, following a plea of guilty to a violation of 21 U.S.C. § 846, conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. D.E. 318. Defendant was sentenced to 72 months of imprisonment followed by four years of supervised release. *Id.* at 2–3. Defendant was released from custody to begin service of his four-year term of supervision on October 21, 2019. On January 1, 2020, following a substance abuse assessment, Defendant was referred to Windows of Discovery for outpatient substance abuse treatment. Defendant successfully completed the program on July 31, 2020. On December 22, 2020, Judge Van Tatenhove approved that no action be taken following the probation officer's report that Defendant had violated the conditions of his supervised release by traveling to North Carolina without permission and using controlled substances. D.E. 368. On November 9, 2021, Judge Van Tatenhove approved that no action be taken following the probation officer's report that Defendant pleaded guilty to public intoxication by controlled substance in the Laurel County District Court. D.E. 369.

**I.**

On July 22, 2022, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single violation. According to the Report,

> On July 21, 2022, at 11:20 a.m., this Officer conducted a home visit at Napier's residence for the purpose of monitoring compliance. After two (2) failed attempts to produce a urine specimen for drug testing, the defendant was instructed to immediately report to the U.S. Probation Office, in London, Kentucky, for a drug test. This Officer advised Napier if he did not report as directed, it would be considered a refusal to comply with drug testing, which is mandatory revocation. He verbally acknowledged his understanding. Napier failed to report for a drug test as directed, and, as of the date of this report, he still has not reported or made any contact with this Officer.

Violation #1 charges Defendant with violating the conditions requiring him to submit to periodic drug testing and to report to the probation officer as directed. This is a Grade C violation.

On September 9, 2022, the USPO issued the Addendum to the Report ("the Addendum"). The Addendum charges an additional violation. According to the Addendum,

> On August 24, 2022, the Leslie County Sheriff's Department arrested and charged Napier in Leslie County District Court, Hyden, Kentucky, case number 22-F-0139, with Charge 1) Failure to or Improper Signal (KRS 189.380, a violation); Charge 2) Fleeing or Evading Police, 2nd Degree (KRS 520.100, a Class A misdemeanor); Charge 3) License to be in Possession (KRS 186.510, a Class B misdemeanor); Charge 4) Careless Driving (KRS 189.290, a violation); Charge 5) Failure to Produce Insurance Card (KRS 304.39- 117, a violation); and Charge 6) No Motorcycle Operators License (KRS 189.285(1)(a), a violation). He was lodged at the Leslie County Detention Center on a $2,500.00 cash bond.
>
> On September 6, 2022, Napier appeared in Leslie County District Court, and entered a guilty plea to Charge 2) Fleeing or Evading Police, 2nd Degree (KRS 520.100, a Class A misdemeanor). He was sentenced to 13 days jail, credit for time served, and all other charges were dismissed.

Violation #2 charges Defendant with violating the condition requiring him to not commit another federal, state, or local crime. This is a Grade C violation.

## II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on September 9, 2022. D.E. 374. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required.

At the final hearing on September 27, 2022, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 376. Defendant waived a formal hearing and stipulated to the violations as set forth in the Report and the Addendum.[1] *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct consituting Grade C violations under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(3).

During the final hearing, the parties each presented their recommended sentence. The government recommended ten months of imprisonment to be followed by three years of supervised release. Defense counsel recommended a split sentence of three months of imprisonment followed by three months of home incarceration pursuant to U.S.S.G. § 7B1.3(c).

---

[1] As to Violation #2, the parties indicated that Defendant's stipulation was narrowed to fleeing or evading the police.

3

The government stated that Defendant's acceptance of responsibility and the unfortunate circumstances of his childhood, including the death of his father, are mitigating factors. However, the government argued that the breach of the Court's trust is particularly significant in light of the sentence Defendant received for the underlying conviction and the two previous reports of violations for which the Court took no action. The government also noted that the underlying offense involved Defendant pulling in several other individuals into his methamphetamine manufacturing across multiple locations. The government argued that the previous resources invested into Defendant have been ineffective and the public needs protection from his criminal conduct. In light of these circumstances, the government argued that alternative sentencing is not a viable option.

Defense counsel stated that Defendant acknowledges the severity of his actions and is remorseful for them. Defense counsel argued that a split sentence including three months of imprisonment followed by three months of home detention is appropriate due to multiple mitigating factors. First, defense counsel stated that Defendant previously completed intensive outpatient treatment and currently participates in Narcotics Anonymous meetings and has a sponsor in that program. Second, defense counsel noted that, prior to the current violations, Defendant had been testing negative for any drug use and he had been cooperating with the probation officer. Third, Defendant's father was killed in a car accident when he was fifteen, which is when he first began using marijuana and alcohol.

Defense counsel also stated that, on the day he was directed to report to the USPO for drug testing, Defendant was in a motorcycle accident and was taken to the hospital for treatment of minor injuries. While Defendant's mother communicated these circumstances to the USPO, Defendant had no further contact with the probation officer. Defense counsel stated that

Defendant acknowledges that he should have reported to the USPO the next day. According to defense counsel, Defendant plans to work towards obtaining his GED and employment upon release. Defense counsel stated that Defendant has helped raise his girlfriend's child. Counsel further indicated that Defendant's girlfriend is currently pregnant with his child and is due to give birth in January, for which he would like to be present.

Defendant addressed the Court directly and apologized for the violations. Defendant also stated that he will do his best to better himself.

During the final hearing, the undersigned stated that Defendant's presence at the birth of his child may motivate him to make the lasting, positive change he needs to avoid further criminal conduct. Thus, the undersigned directed defense counsel to file verification of the expected due date in the record.

On October 6, 2022, defense counsel filed a notice in the record verifying the expected due date. D.E. 378-1.

### III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of the Class B felony conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846. *See* 21 U.S.C. § 841(b)(1)(B)(viii); 18 U.S.C § 3559(a)(2). His conviction carries a 36-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-*

*Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under § 7B1.1, Defendant's admitted conduct in Violations #1 and #2 would qualify as Grade C violations. Given Defendant's criminal history category of IV (the category at the time of the conviction in this District) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is six to twelve months. U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's original conviction carries no maximum term of supervised release. 21 U.S.C. § 841(b)(1)(B)(viii).

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he refused to comply with drug testing imposed as a condition of his supervised release. 18 U.S.C. § 3583(g)(3). Both parties recognized that revocation is appropriate.

6

## IV.

The Court has reviewed the entire record, including the Report, the Addendum, and their accompanying documents, and Defendant's underlying judgment and sentencing materials. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant's conviction for conspiracy to manufacture 50 grams or more of a methamphetamine mixture is serious. While the current violations are not directly tethered to the underlying offense, the conditions of supervised release, particularly periodic drug testing, are designed to help Defendant avoid similar conduct. His failure to comply with those conditions creates a risk of recidivism.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Defendant's criminal history and current violations involve dangerous conduct. Both violations involve Defendant avoiding responsibility, and Violation #2 includes criminal conduct that poses danger to the public. Further, Defendant's first conviction in 2008 was for fleeing or evading law enforcement, the same conduct underlying Violation #2. This reflects that Defendant has yet to learn from and put his past criminal conduct behind him. The Court acknowledges that Defendant's acceptance of responsibility and the death of his father during his childhood, which led to his substance abuse, slightly mitigate the violations.

The Court also considers the need to provide Defendant with training and treatment. Defendant did not request additional treatment and the current violations do not definitively indicate he is struggling with substance abuse. However, if needed, there may be suitable treatment options available during the term of imprisonment, and the conditions of release provide treatment at the direction and discretion of the USPO.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The current breach of trust is particularly severe in light of the amount of trust and leniency afforded to Defendant by the Court. Defendant has benefited from the Court declining to take action in response to previously reported violations on two separate occasions. Defendant also benefited from receiving a mandatory minimum sentence for his underlying conviction. Instead of taking advantage of this leniency and avoiding further criminal conduct, Defendant committed multiple violations of the conditions of his supervised release.

The Court must consider the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration term of nine months. For the reasons stated above, a split sentence including only three months of imprisonment is not warranted. However, as stated during the final hearing, the undersigned believes that Defendant's temporary release to attend the birth of

8

his child may prompt lasting change to help him avoid further criminal conduct. The Court has investigated the possibility of Defendant's temporary release to attend the event and found that a recommendation to the BOP is the only feasible option. Thus, the Court finds a nine-month term of imprisonment is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). The Court will also recommend that the BOP temporarily release Defendant to attend the birth of his child.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction does not carry a maximum term of supervised release due to the nature of the underlying offense. *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(B)(viii). For the reasons stated above, the Court will recommend an additional term of three years of supervised release be imposed.

### V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

1. That Defendant be found guilty of the violations;
2. Revocation with a term of nine months of imprisonment;
3. Three years of supervised release to follow under the same conditions previously imposed;
4. That the BOP temporarily release Defendant to attend the birth of his child.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen** days after being served with a copy of this

recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

This the 6th day of October, 2022.

Signed By:
Hanly A. Ingram
United States Magistrate Judge