UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-50-GFVT-HAI-8 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| WILLIAM STEFAN NAPIER, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

The Court, on referral, considers reported supervised release violations by Defendant William Stefan Napier. *See* D.E. 401. District Judge Van Tatenhove entered a judgment against Defendant on March 11, 2015, following a plea of guilty to a violation of 21 U.S.C. § 846, conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. D.E. 318. Defendant was originally sentenced to seventy-two months of imprisonment followed by four years of supervised release. *Id.*

Defendant was released from custody to begin service of his four-year term of supervised release on October 21, 2019. On December 22, 2020, Judge Van Tatenhove approved that no action be taken following the probation officer's report that Defendant had violated the conditions of his supervised release by traveling to North Carolina without permission and using controlled substances. D.E. 368. On November 9, 2021, Judge Van Tatenhove again approved that no action be taken following the probation officer's report that Defendant had violated the conditions of his supervised release after he plead guilty to public intoxication by controlled substance in the Laurel County District Court. D.E. 369.

On July 22, 2022, the United States Probation Office ("USPO") issued a Supervised Release Violation Report after Defendant failed to submit to required periodic drug testing and report to his probation officer as directed. D.E. 380 at 2. He was later charged with violating his condition to not commit a federal, state, or local crime. *Id.* Defendant stipulated to the violations and was sentenced to nine months of imprisonment followed by three years of supervised release. D.E. 383. Defendant was released to begin his term of supervised release on June 2, 2023.

On August 1, 2023, the USPO issued a Supervised Release Violation Report charging Defendant with committing a federal, state, or local crime while on supervision. *See* D.E. 399 at 1. After a final hearing under Federal Rule of Criminal Procedure 32.1, Defendant was found not guilty of the violation. D.E. 400.

**I.**

On September 3, 2024, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings and secured an arrest warrant on September 5, 2024. D.E. 401. The Report charges Defendant with two violations. Both concern Defendant's sweat patch drug test result received by the USPO on September 3, 2024, which was positive for methamphetamine. Violation #1 alleges that Defendant unlawfully used a controlled substance, in violation of Mandatory Condition #3. This is a Grade C violation. Violation #2 alleges that Defendant committed a crime and unlawfully possessed a controlled substance, in violation of Mandatory Conditions #1 and #2. This is a Grade B violation.

On October 18, 2024, the USPO issued an addendum to the Report alleging two new violations. The addendum was issued in response to Defendant's written admission to methamphetamine and Neurontin use when asked on November 18, 2024, to produce a urine

2

sample by the United States Marshal Service. Violation #3 alleged that Defendant again unlawfully used a controlled substance, in violation of Mandatory Condition #3. This is a Grade C Violation. Violation #4 alleged that Defendant again committed a federal, state, or local crime and unlawfully possessed a controlled substance, in violation of Mandatory Conditions #1 and #2. This is a Grade B Violation.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on October 18, 2024. D.E. 407. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on November 4, 2024, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 409. Defendant waived a formal hearing and stipulated to the violations set forth in the Report and its addendum. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

The Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is a

3

Grade B violation under the Guidelines. *See* U.S. Sent'g Guidelines Manal § 7B1.1(a)(3) (U.S. Sent'g Comm'n 2023).

## II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of the Class B felony conspiracy to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846. See 21 U.S.C. § 841(b)(1)(B)(viii); 18 U.S.C § 3559(a)(2). His conviction carries a 36-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of sentencing) and the "grade" of the particular violation proven. See United States v. Perez-Arellano, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S. Sent'g Guidelines Manual § 7B1.1(b) (U.S. Sent'g Comm'n 2023).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as Grade C violations with respect to Violations #1 and #3 and as Grade B violations with respect to #2 and #4. Given Defendant's criminal history of IV (the category at the time of his conviction in this District) and

4

Grade B violations, Defendant's range, under the Revocation Table of Chapter 7, is twelve to eighteen months. Consistent with the guidance of appellate courts, this Court takes the Guidelines-recommended sentence as its starting point and has remained cognizant of it in forming its recommended revocation sentence. E.g., Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016).

### III.

At the final hearing, the United States and Defendant jointly recommended a sentence of eighteen months of imprisonment to be followed by no supervised release.

Regarding the term of imprisonment, the United States emphasized how the two separate felonies at issue amounted to an egregious breach of trust that justified a term of imprisonment at the top of Defendant's Guidelines range. Although the violations were mitigated by Defendant's admission of guilt, they were aggravated by the connection between the abuse of methamphetamine and the nature of the underlying meth trafficking conspiracy. The United States noted Defendant's supervised release had already been revoked for nine months for prior violations.

Regarding the recommendation of no supervised release, the United States discussed the purposes of supervised release: rehabilitation and public safety. In terms of rehabilitation, the United States argued that the Court has done everything possible to help rehabilitate Defendant and it has not worked. The United States also explained there was little risk of societal danger. Defendant's prior criminal history has not been violent. For the most part, the only person Defendant's actions have put in danger are himself. The United States also pointed out the difficulties that the USPO has had in attempting to communicate with Defendant.

5

Defense counsel agreed with the factors described by the United States. Defense counsel argued that Defendant has always been candid and accepted responsibility for his violations. She explained that Defendant has been using drugs and alcohol since he was fourteen or fifteen. She emphasized that Defendant's criminal issues primarily involve personal drug use, not another or more violent offense.

Defendant acknowledged his culpability but did not allocate further.

### IV.

The Court has reviewed the entire record, including the Report, addendum, and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Through that consideration, the Court adopts the parties' joint proposal and recommends that Defendant's supervision be revoked and that he be sentenced to an eighteen-month term of imprisonment with no further supervised release.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Nothing in the record supports application of this exception, and neither party relied upon it.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S. Sent'g Guidelines Manual § 7B1.3(a)(2) (U.S. Sent'g Comm'n 2023) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even

if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

First, the Court considers the nature and circumstances of the underlying offense. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was convicted of conspiracy to manufacture 50 grams or more of a methamphetamine mixture. This is a serious conviction. The current violations are not directly connected to the underlying offense; nothing in the record suggests Defendant intended manufacture methamphetamine. But any return to meth use raises the possibility of additional criminal activity. Nonetheless, the significance of the underlying conviction weighs in favor of a longer term of imprisonment.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Here, Defendant has a lengthy criminal history. His repeated encounters with the criminal justice system have given him ample opportunity to learn how to comport in accordance with the law. Despite this, he has continued to disregard it. While the Court acknowledges Defendant's acceptance of responsibility, the mitigating role of this admission is limited by the frequency of similar violations. As suggested by counsel, Defendant's criminal conduct primarily revolves around drug use. Defendant becomes more dangerous to the public when using controlled substances, but he is most dangerous to himself. Overall, these factors weigh in favor of revocation and a longer term of imprisonment.

The Court must also consider whether a defendant needs any education, training, or treatment. Defendant's criminal history is not definitively indicative of a need for substance abuse treatment. It does appear that Defendant attempted to participate in the Residential Drug Abuse

7

Program (RDAP) while imprisoned and was involved with an out-patient treatment program during his most recent term of release. If needed, Defendant can access treatment resources in prison.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 2582(e). Defendant's history with the Court makes the breach of trust factor particularly serious in this case. This is not the first time Defendant has violated his conditions while on release. The Court has treated Defendant with a considerable amount of trust and leniency. The Court has given Defendant unique opportunities, including limited release from imprisonment during a prior revocation to see the birth of his child. *See* D.E. 384. The fact that Defendant has been afforded such chances yet still violated the Court's trust justifies a sentence higher within his Guideline range. Defendant further breached the Court's trust when, knowing the USPO would receive positive drug results from his sweat patch test taken in September 2024, Defendant used methamphetamine and Neurontin again in October 2024.

The Court must consider the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, this goal is met by sentencing Defendant to a within-Guidelines term of imprisonment for his revocation conduct.

8

In fashioning its recommended sentence, the Court must take into account whether an additional term of supervised release is warranted. Here, an additional term of supervised release is not warranted. Defendant has been given several chances to take advantage of the USPO's assistance. The record shows no indication that Defendant has attempted to make any progress. The USPO has had difficulties communicating and working with Defendant throughout his supervised release. While Defendant's drug use is a threat to his own safety, his criminal history does not show him to be violent. This lack of public safety concern further obviates the need for future involvement of the USPO.

## V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of the violations;

(2) Revocation and imprisonment for a term of eighteen months; and

(3) No further supervised release following the end of imprisonment.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 7th day of November, 2024.

Signed By:
Hanly A. Ingram
United States Magistrate Judge